**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| MAURICE SCOTT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-1032-CMC-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| TITLEMAX OF SOUTH ) | |
| CAROLINA INCORPORATED, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

*Pro se* Plaintiff, Maurice Scott ("Scott"), appears to allege a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*, against TitleMax of South Carolina, Inc. ("TitleMax"). In a Report and Recommendation filed June 6, 2010, the undersigned gave the following summary of the background of Scott's claims:

1. TitleMax filed a claim and delivery action in Richland County Magistrate's Court (No. 2008-CV-40-1091807) seeking repossession of an automobile owned by Scott in which it possessed a security interest. The complaint is dated August 26, 2008, and was served on Scott on August 31, 2008. (Def.Mem., Ex. A).

2. Scott filed a *pro se* answer on September 2, 2008. Interestingly, Scott attached to his answer a copy of a proposed federal court complaint against TitleMax and Mary Johnson alleging violations of the Fair

        Debt Collection Practices Act. The proposed complaint is dated August 26, 2008, but it has never been filed in this Court. (Def.Mem., Ex. B).

3. On October 13, 2008, the claim and delivery action was mediated and the parties signed a "Memorandum of Agreement." (Def.Mem., Ex. C).

4. On October 14, 2008, counsel for TitleMax sent Scott a proposed consent order memorializing the agreement which modified Scott's loan agreement. A revised consent order was sent on October 20, 2008. Scott never signed the consent order.

5. It is unclear from this record how the claim and delivery action was resolved. In his present complaint, Scott specifically alleges that TitleMax violated the terms of the mediation agreement by calling him on the telephone on October 31, 2008.[1] TitleMax takes the position that the claim and delivery action was resolved by the mediation agreement, even though there is no record that the final agreement was signed by Scott, or that the court entered the proposed order. (Def.Mem., p. 2).

By order of July 19, 2010, the Honorable Cameron McGowan Currie, United States District Judge, recognized that this case was subject to an automatic stay since TitleMax was in bankruptcy. On June 29, 2011, counsel for TitleMax notified this Court that the bankruptcy case had been closed.

---

[1] Scott also alleges a series of calls that preceded the filing of the claim and delivery action.

An order was issued on June 30, 2011 directing TitleMax to file a responsive pleading. On July 14, 2011, TitleMax filed an Answer and a Motion To Compel Arbitration And Dismiss Or Stay Case. Scott filed an opposition memorandum to TitleMax's motion on July 21, 2011. After review of the record, the undersigned concludes that TitleMax's motion should be granted.

The Federal Arbitration Act ("FAA") provides that arbitration clauses in contracts that involve interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Arbitration clauses subject to the FAA are governed by state-law contract principles. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). There is a strong policy favoring arbitration under federal law. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). "Pursuant to the liberal policy, any doubts concerning the scope of arbitable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). "A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute." Strawn v. AT&T Mobility, Inc., 593 F.Supp.2d 894, 897 (S.D.W.Va. 2009) *citing* American Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005).

The "Supervised Loan Agreement" between Scott and TitleMax contains a clear, conspicuous, and unequivocal arbitration clause. It states:

3

> For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes or controversies arising from or relating direct or indirectly to the signing of the Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision, (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement including the Arbitration Provision, the information you gave us before entering into this Loan Agreement, any past agreement or agreements between you and us, and/or any renewal of this Loan Agreement, (c) all counterclaims, cross-claims and third-party claims, (d) all common law claims, based upon contract, tort, fraud, or other intentional torts, (e) all claims based upon a violation of any state or federal constitution, statute or regulation, (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us, (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as 'related third parties'), including claims for money damages and/or equitable or injunctive relief, (h) all claims asserted on your behalf by another person;(i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"), and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

(Def.Mem., Ex. A)

An affidavit of Don Thomas, Chief Financial Officer of TitleMax establishes an interstate nexus for the transaction between the parties. (Def.Mem., Ex. B). Scott has shown that he is unwilling to arbitrate his dispute with TitleMax. Scott does not argue the validity of the original arbitration agreement. He argues:

> that no contractual obligation exist (sic) under such contractual obligation in that in mediation in state case 2008-cv-401091807, one of the requirement (sic) of that mediation was the destruction of previous contractual statements, and preparation of a new document, with new terms and obligations, such actions were not prepared or presented by the defendant.

(Pl.Mem., pp. 1-2).

Scott's argument is not supported by the record. The memorandum of agreement produced by the

4

state court mediation clearly states "(t)he parties will execute a new agreement <u>on the same terms as the agreement at issue</u> except that the first payment shall commence on November 1, 2008...." *See* (Def.Mem. In Support of Motion to Dismiss (Doc.No. 13), Ex. C) (emphasis added). The proposed new agreement which was never signed incorporated all the provisions of the original agreement including the arbitration clause. Given the liberal policy in favor of arbitration and the broad provisions of the arbitration agreement, TitleMax's motion to compel arbitration should be granted.

It is, therefore, recommended that TitleMax's motion to compel arbitration be **granted** and this action be **dismissed.**

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

January 17, 2012

**The parties are referred to the Notice Page attached hereto.**

5

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).